UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael Ben King, ) Civil Action No. 5:20-03674-KDW <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) ORDER <br> Kilolo Kijakazi,[1] Acting Commissioner ) <br> of the Social Security Administration, ) <br> ) <br> Defendant. ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the decision is supported by substantial evidence and whether the Commissioner's decision contains an error of law. For the reasons that follow, this court affirms the Commissioner's decision.

I.    Relevant Background

   A.    Procedural History

According to the record, Plaintiff applied for both DIB and SSI on May 15, 2017, alleging he became unable to work on January 31, 2011.[2] Tr. 103, 105. Plaintiff's applications were denied initially on October 2, 2017, Tr. 103, 105, and on reconsideration on February 16, 2018. Tr. 179,

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the named defendant in this action.

[2] It appears from the record that at least initially, Plaintiff alleged he disabled as of January 1, 2011. Tr. 213, 220. Thereafter, it appears he alleges he became unable to work on January 31, 2011. Tr. 227.

181. Plaintiff appeared before Administrative Law Judge ("ALJ") Clinton C. Hicks on July 18, 2019 for a hearing. Tr. 36-70. Plaintiff, his wife, and Vocational Expert ("VE") Karl Weldon testified at the hearing. *Id.* The ALJ denied Plaintiff's claim for both DIB and SSI in a decision dated October 7, 2019. Tr. 13-29. Plaintiff submitted a Request for Review of Hearing Decision/Order, and on August 17, 2020, the Appeals Council denied the request for review. Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on October 20, 2020. ECF No. 1.

    B.    Plaintiff's Background

Plaintiff was born on October 4, 1977 and was 33 years old on his alleged onset date of January 31, 2011. Tr. 125. Plaintiff completed his education through the twelfth grade and was previously employed as a general service technician. Tr. 40, 41, 249. Plaintiff attended special education classes while in school. Tr. 249. Plaintiff alleges he is disabled due to schizophrenia with bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety disorder, panic disorder, social anxiety disorder, obsessive compulsive disorder, sleep apnea, migraines, sinusitis, gastro esophageal reflux disease ("GERD"), seborrheic dermatitis, seborrheic keratosis, and ischemic heart disease. Tr. 248. In the Work History Report, Plaintiff reports that in the past 15 years, he worked at several different car repair places. Tr. 238. Plaintiff reports that he was terminated at his last place of employment due to memory issues. Tr. 41. In Plaintiff's Disability Report-Appeal, dated December 4, 2017, Plaintiff indicated that he was experiencing an increase in the number of migraines, and that his migraines were getting worse as of September 1, 2017. Tr. 274-275. Plaintiff further reported that since the last report, he has had a change in his activities in that he has to be reminded to perform daily living activities, such as taking a bath, taking medications, and eating. Tr. 279. In a subsequent Disability Report-Appeal, dated April 5, 2018, Plaintiff

2

indicated his schizophrenia, social anxiety disorder, panic disorder, migraines, and insomnia had gotten worse as of February 1, 2018. Tr. 287. He further indicated he was now seeing a heart doctor due to issues with low blood pressure. Tr. 287. As far as any change to his activities, Plaintiff indicated that he has withdrawn from public places, believes people are talking about him, though they are not, is unable to focus on hobbies or any one thing longer than ten minutes, and needs to be reminded to take care of his hygiene, to take medication, and to perform household chores. Tr. 293.

    C.    Administrative Proceedings

Plaintiff appeared with counsel for the administrative hearing in Charlotte, North Carolina before ALJ Clinton C. Hicks on July 18, 2019. Tr. 36-70. Plaintiff testified, along with VE Karl Weldon, and Tabitha King, Plaintiff's wife. Tr. 36-70.

    1.  Plaintiff's Testimony

In response to questions from the ALJ, Plaintiff affirmed that he was 41 years old on the date of the hearing. Tr. 39. He testified that he lives in Lancaster with his wife and mother-in-law. Tr. 39. He testified that his wife does not work, and his mother-in-law receives certain benefits, like food stamps. Tr. 39-40. Plaintiff has a 19-year-old daughter who is autistic. Tr. 40. Plaintiff testified he drives and drove himself to the hearing.[3] Tr. 40. He graduated from high school. Tr. 40. He testified he is 6'0" tall and weighed 230 pounds. Tr. 40. Plaintiff testified that he does not have any income of his own and has not worked since his alleged onset date in 2011. Tr. 40-41. He recalled that he was working as a general service technician then and stopped working because he would "bring in cars to work on and forget why [he] brought them in." Tr. 41. He agreed that he was let go from his position. Tr. 41.

---

[3] Later in the hearing, Plaintiff testified his wife drove him to the hearing. Tr. 46.

3

In response to questions from his attorney, Plaintiff testified that he was diagnosed with schizophrenia and has been seeking treatment for it since 2014. Tr. 41. Specifically, he testified that he has been undergoing treatment at Catawba Mental Health for a number of years. Tr. 41. He agreed that he is prescribed medication that he takes regularly. Tr. 41-42. He testified that his wife helps remind him to take his medications. Tr. 42. He recalled that in the past, he has forgotten to take his medication because he has difficulties with his memory. Tr. 42. He also testified that he has to be reminded to complete many tasks, including household chores and basic hygiene responsibilities like brushing his teeth and bathing. Tr. 43.

When asked how his schizophrenia diagnosis affects him, Plaintiff testified that sometimes he is unable to get out of bed or leave the house because he sees things and hears people that are not there. Tr. 43. Plaintiff testified that these issues happen daily even when he takes his medication. Tr. 43. Plaintiff confirmed he had also been diagnosed with obsessive compulsive disorder ("OCD"). Tr. 43-44. When asked how the OCD affects him, Plaintiff explained he has to "do things in threes. Like a light switch has to be done by threes." Tr. 44. Plaintiff confirmed that he has issued with pacing and explained "you can almost see a path in our trailer where I've walked because I'm constantly walking during the day." Tr. 44. When asked about his daily activities, Plaintiff testified that when he gets up in the morning, he goes on a computer chat room for people with schizophrenia. Tr. 44. Plaintiff testified that he then uses the PlayStation or listens to music. Tr. 44. Plaintiff testified that his wife does the cooking and cleaning though he can use the microwave "a little." Tr. 45. Plaintiff does not have any yard work that he is required to do outdoors. Tr. 45.

Plaintiff testified that he also has issues with anxiety and depression. Tr. 45. He testified that the depression is particularly bad because he does not even want to leave his house. Tr. 45.

4

He testified that at times he does not leave the house for one-to-two weeks at a time. Tr. 45. He testified that he enjoys seeing his friends and his mother, who lives out of state. Tr. 46. He explained that his wife will drive him to North Carolina to see his mother. Tr. 46. He testified that he has difficulty remembering things, and that was one of the reasons he was let go from his former job. Tr. 42. He testified that wife handles most of the cleaning and cooking. Tr. 45. When asked to describe his depression, Plaintiff testified that it is like he has a "crushing feeling," and he does not want to leave the house. Tr. 46-47. He explained that he gets worried about everybody and afraid that something is wrong with everyone in the family. Tr. 47. He testified that he has trouble being around the general public or more than four people. Tr. 47. He testified he "just can't deal with that many people." Tr. 47.

Plaintiff testified he started to get migraines in 2014 or 2015. Tr. 47. He testified he has migraines approximately three or four times a week, lasting in duration from 30 minutes to two hours. Tr. 48-49. When he has a migraine, he lies down in the dark for a certain amount of time, and he also takes medication for migraines. Tr. 49. He further testified that he has had problems with his back. Tr. 50.

  2. VE's Testimony

The vocational expert, Mr. Karl Weldon, testified that Plaintiff had the following past work: (1) Auto Inspector, light exertional level, SVP 5, Dictionary of Occupational Titles ("DOT") No. 620.261-018; (2) Auto Technician, medium exertional level, SVP 6, DOT No. 620.28.-028; and (3) Tire and Oil Changer, heavy exertional level, SVP 3, DOT No. 915.684-010. Tr. 59, 60. The ALJ asked the VE to assume the following hypothetical: a person of Plaintiff's age, same physical and mental background, who can perform the full range of light work with the following limitations: simple, routine repetitive tasks of unskilled work; no interaction with the public;

5

occasional interaction with supervisors and co-workers; can stay on task for two hours at a time, with non-production rate work. Tr. 60. The VE stated that based on the limitations provided, there would be jobs available at the light, unskilled, level of employment including (1) Packager, DOT No. 753.6687-038; (2) Garment Sorter, DOT No. 222.687-014; and (3) Cleaner, DOT No. 323.687-014. Tr. 60-61. In response, Plaintiff's attorney asked the VE whether any jobs would be available if the individual was unable to stay on task for less than two hours, to which the VE responded the individual could not perform substantial gainful work of any type. Tr. 61.

       3.   Testimony of Lay Witness

The ALJ also questioned Mrs. Tabatha Sue Bradshaw King, Plaintiff's wife. She testified that her husband works better around fewer people, and that he sees things in public that are not there. Tr. 52. She testified that he experiences memory problems, as well. Tr. 52. Mrs. King testified that she manages her husband's medications and takes him to his appointments. Tr. 55. She also testified that his back pain had gotten worse in the past six months. Tr. 56. She was further questioned about notes in the medical records indicating Plaintiff had taken some of her Valium. Tr. 64. Mrs. King testified that during one blood test, Plaintiff's screening indicated he was positive for a "benza-whatever," but she has never been prescribed Valium. Tr. 64-65.

II.   Discussion

    A.   The ALJ's Findings

In his October 7, 2019 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.   The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.
>
> 2.   The claimant has not engaged in substantial gainful activity since January 31, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: schizophrenia, depression, post-traumatic stress disorder (PTSD), generalized anxiety disorder, obsessive compulsive disorder (OCD), substance abuse disorder, degenerative disc disease, migraines, obstructive sleep apnea, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to simple, routine, and repetitive tasks and unskilled work. He should have no interaction with the general public, but can have occasional interaction with supervisors and co-workers, and is able to stay on task for two hours at a time. Further, he is limited to non-production pace work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 4, 1977 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 13-29.

    B.    Legal Framework

        1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant

8

the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to past relevant work ("PRW") as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

---

must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

9

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . .." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.  Analysis

Plaintiff's overarching complaint is that the ALJ did not adequately explain his residual functional capacity ("RFC") findings as required by Social Security Ruling 96-8p. ECF No. 20, p. 21. Specifically, Plaintiff alleges (1) the ALJ's assessment of his mental impairments is not supported by substantial evidence; (2) the ALJ's RFC finding that he should be limited to simple, routine, and repetitive tasks does not account for Plaintiff's difficulties with concentration, persistence, and pace; and (3) the ALJ failed to assess the impact of Plaintiff's migraine headaches. Pl.'s Br., 23-27, ECF No. 20. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff was not disabled. Def.'s Br. 2, ECF No. 22.

SSR 96-8p provides that an ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts, when supporting the RFC assessment. In *Thomas v. Berryhill*, the Fourth Circuit outlined the proper RFC analysis, explaining that, "[t]he ALJ must consider all of claimant's 'physical and mental impairments, severe and otherwise, and determine on a function-by-function basis, how they affect [the claimant's] ability to work.'" 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). Plaintiff argues the ALJ did not perform a function-by-function analysis in this case, as further outlined below.

1.  The ALJ's Evaluation of Plaintiff's Mental Impairments

Plaintiff first argues the ALJ's assessment of his mental impairments is not supported by substantial evidence. Plaintiff raises several issues with the ALJ's analysis, the first being that the ALJ erred in finding that Plaintiff had only a mild limitation when it comes to remembering and applying information and a moderate limitation when it comes to concentrating, persisting, and maintaining pace. Pl's Br. 23.

In assessing the severity of Plaintiff's mental impairments, the ALJ determined that Plaintiff had a mild limitation when it came to remembering and applying information; a moderate limitation when it came to interacting with others; a moderate limitation when it came to concentration, persistence and maintaining pace; and a moderate limitation in adapting or managing oneself. Tr. 20. As support for this determination, the ALJ cited to Plaintiff's testimony, as well as notes within medical records, and Plaintiff's reports of his activities of daily living. Plaintiff argues that the ALJ failed to consider several instances in his medical records documenting his inability to focus, as well as the fact that his frequent memory issues ultimately resulted in him losing his prior employment. Pl's. Br. 23-24. Plaintiff also questions the ALJ's reliance on his daily activities in assessing his ability to remember and apply information because evidence in the record suggests he needs assistance in the form of reminders to complete tasks, as well as assistance from his wife to complete daily activities such as bathing and keeping track of medical appointments. *Id.* at 24-25. Finally, Plaintiff argues that the ALJ's reliance on Plaintiff's statement that he helps homeschool his daughter does not necessarily support a finding that he is able to complete work-related tasks. *Id.* at 25. In short, Plaintiff argues the ALJ ignored facts or instances within the record that show Plaintiff was limited in his performance of the same activities which the ALJ points to as evidence or support for his findings. The undersigned disagrees.

In his decision, the ALJ must build a "logical bridge" from the evidence to his or her conclusion. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ must consider all of Plaintiff's physical and mental impairments to determine how they affect his ability to work. *Id.* at 188. To be disabling, an impairment or combination of impairments must be so functionally limiting as to preclude any substantial gainful activity for twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a); 416.905(a). In assessing Plaintiff's

limitation in understanding, remembering or applying information, the ALJ acknowledged Plaintiff's reports that he has difficulty remembering things and requires reminders from his wife, as well as Plaintiff's testimony that he needs repeated instructions. Tr. 20. However, the ALJ also considered the fact that within the medical records, Plaintiff's providers noted he had intact recent and remote memory loss, as well as the fact that Plaintiff denied memory loss during a visit with a physician. *Id.* In assessing Plaintiff's limitation with respect to concentrating, persisting, or maintaining pace, the ALJ considered the fact that Plaintiff's providers noted he had normal concentration and attention, in addition to indicating that Plaintiff assisted his daughter in her homeschooling and was able to play video games and fish on what appears to be a consistent basis. *Id.* The ALJ further considered and explained the fact that Plaintiff's providers repeatedly recorded in their notes that he maintained normal attention and concentration on mental status examinations. *Id.* The ALJ therefore explained the evidence within the record that he relied on in assessing the severity of Plaintiff's mental impairments in these two areas. These findings are further reflected in the RFC in that the ALJ still limited Plaintiff to "simple, routine, and repetitive tasks" and further limited Plaintiff to "non-production pace work." Tr. 21.

Plaintiff further argues the ALJ erred in assessing Plaintiff's mental impairments by failing to adequately account for a moderate limitation in interacting with others. Plaintiff argues that the ALJ's reliance on two instances where Plaintiff's social interactions were considered "appropriate" is not indicative of the pattern of social problems documented within the record. Plaintiff points to the opinions of Dr. Chad Ritterspach and Ms. Carole Cochran[5] to support his argument that the ALJ erred in his assessment of Plaintiff's mental impairments and the resulting RFC. Dr.

---

[5] Ms. Cochran is a Mental Health Counselor who, on July 10, 2019, submitted a Medical Source Statement of Ability to do Work-Related Activities (Mental). Tr. 699-701.

13

Ritterspach, a consultative examiner, indicated in his psychological evaluation of August 26, 2017, that Plaintiff would be better suited in an environment where he had little interaction with others. Tr. 489. Dr. Ritterspach further stated that in the workplace, Plaintiff's ability to work with others would vary from "WNL" (within normal limits) to moderately impaired when psychotic. Tr. 489. Dr. Ritterspach ultimately determined that "due to psychosis, depression, mania, and likely OCD" Plaintiff was not capable of attending to and performing work tasks well, even if simple and routine in nature. Tr. 490. The ALJ considered Dr. Ritterspach's opinion but found it unpersuasive because it was not consistent with the record and appeared to be based primarily on his conversation with Plaintiff. Tr. 26. The ALJ notes that Dr. Ritterspach did not review Plaintiff's medical record or provide any treatment. Tr. 27.

In her medical source statement, dated July 10, 2019, Ms. Cochran indicated Plaintiff would have "moderate" restriction in interacting appropriately with the public and with co-workers and an "extreme" restriction in interacting appropriately with supervisors. Tr. 700. Again, the ALJ considered this information but found her opinion to be unpersuasive based on the other evidence found within the record and based on Plaintiff's own reports of his daily activities. Tr. 27.

The ALJ found Plaintiff to have a moderate limitation in interacting with others, apparently relying upon the fact Plaintiff was described by his providers as cooperative, having maintained appropriate eye contact, and having had appropriate interaction with others. Tr. 20. The ALJ also indicated that Plaintiff reported to his therapist that when he was out shopping and became anxious, he would move to an empty aisle, and it would improve his feelings of anxiety. Tr. 20. The ALJ further explained that while Plaintiff complained of symptoms associated with PTSD, OCD, anxiety, depression, schizophrenia, and substance abuse disorder, the record indicated his condition improved with medication and counseling. Tr. 22. While the record may have shown

14

that Plaintiff's mental impairments fluctuated in severity over time, the ALJ adequately explained in his decision how Plaintiff's mental impairments were reflected in the RFC. Indeed, the ALJ accounted for a moderate limitation in interacting with others within his analysis by limiting the RFC such that Plaintiff could have no interaction with the general public and only occasional interaction with supervisors and co-workers. Accordingly, the undersigned finds that the ALJ adequately explained his decision and substantial evidence supports a finding that the ALJ properly accounted for Plaintiff's mental impairments in his decision.

> 2. The ALJ's RFC Assessment

Plaintiff makes a separate, but related argument when he argues that the RFC finding limiting Plaintiff to simple, routine, repetitive tasks does not account for his difficulties with concentration, persistence and pace. Pl.'s Br. 29-33. Plaintiff argues that he testified that his problems with concentration and memory significantly hindered his ability to maintain gainful employment. *Id.* at 30. He further argues that the RFC does not adequately account for his moderate difficulties in concentration, persistence, and pace by simply limiting him to "simple, routine, repetitive tasks" consistent with the findings in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). *Id.* at 31. The undersigned finds that this argument is without merit.

Within the RFC assessment, the ALJ is required to include a "discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. The RFC must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts such as laboratory findings and non-medical evidence like daily activities and observations. *Mascio*, 780 F.3d at 636. Within the decision, the ALJ explained in detail that the record revealed inconsistencies with respect to Plaintiff's reports that he had difficulty when trying to "remember,

15

understand, and concentrate." Tr. 24. While Plaintiff argues that the ALJ overlooked his testimony regarding the inability to remember what work he needed to perform each day, and that he was fired for not keeping adequate pace at work, the ALJ specifically referenced Plaintiff's testimony regarding these issues. Tr. 20, 24, 26. Indeed, the ALJ included within his hypothetical to the VE that, in addition to limiting him to "simple, routine, repetitive tasks of unskilled work," to also consider a person who "can stay on task for two hours at a time." Tr. 60.

Unlike the ALJ in *Mascio*, the ALJ here accounted for Plaintiff's limitations in concentration, persistence, and pace as evidenced by the detailed discussion in the decision, and in the hypothetical presented to the VE. Moreover, the ALJ also indicated in his decision that Plaintiff's reports of daily activities, as well as notes by his medical providers indicate he had normal concentration and attention, though he still limited Plaintiff in his RFC assessment. After discussing Plaintiff's hearing testimony, the medical evidence of record, and the opinion evidence, the ALJ concluded:

> To account for the claimant's limitations related to his schizophrenia, depression, PTSD, generalized anxiety disorder, OCD, substance abuse disorder, migraines, and *associated difficulty in concentrating and focusing*, he is limited to work that is unskilled and requires the performance of only simple, routine, and repetitive tasks. Due to the claimant's *anxiety related to interacting with others*, he should have no interaction with the general public but can have occasional interaction with supervisors and co-workers. To account for his *mental health symptoms*, the claimant is able to stay on task for two hours at a time, and is limited to non-production pace work.

Tr. 27 (emphasis added). Therefore, this court does not find that the ALJ erred in his evaluation of Plaintiff's ability to maintain pace or stay on task. The ALJ's RFC's determination is supported by substantial evidence within the record.

### 3. The ALJ's Assessment of Migraine Headaches

Plaintiff argues that the ALJ failed to explain why Plaintiff's migraine headaches, which the ALJ indicated was a severe impairment, did not result in a corresponding restriction within the RFC. Pl.'s Br. 33. It is always the claimant's burden to prove disability. 20 C.F.R. §§ 404.1512(a), 416.912(a). In reviewing the ALJ's decision, the ALJ noted that within the medical records, Plaintiff responded to treatment associated with his migraines, including a reduction in how many migraines he had on a monthly basis. Tr. 19. Further, in explaining the RFC assessment, the ALJ explained that while Plaintiff initially reported severe and frequent headaches, throughout the course of his treatment his headaches decreased in frequency. Tr. 23. The ALJ also indicated Plaintiff took prescription medication to help control symptoms. Tr. 23. While Plaintiff argues that the fact that he has migraines should have translated into a restriction within the RFC, the ALJ expressly demonstrated where in the record the ALJ found evidence that Plaintiff's headaches improved with medications. Moreover, while Plaintiff argues the RFC should have contained restrictions such as "time off task, absenteeism, need to periodically lie down, need to avoid triggers such as bright light, loud noises, or other environmental triggers," Plaintiff does not point to any medical records or evidence to support this rationale, other than Plaintiff's testimony at the hearing. The ALJ noted that in a medical record dated May 29, 2019, that Plaintiff's migraines improved with Botox treatments, and he reported in the last month he had no headaches. Tr. 24 (citing Ex. B19F/26). The ALJ also took Plaintiff's migraines into account when formulating his RFC assessment by limiting Plaintiff to unskilled work requiring only simple, routine, and repetitive tasks. Tr. 27. Accordingly, this court finds substantial evidence supports a finding that the ALJ properly accounted for Plaintiff's migraines.

III.  Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court affirms the Commissioner's decision.

IT IS SO ORDERED.

February 8, 2022  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge